Argued and submitted November 6, affirmed December 24, 1985

In the Matter of the Alleged
Violation of ORS 244.040(1) by
David A. Davidson, Petitioner,

DAVIDSON,
*Petitioner on review,*

*v.*

OREGON GOVERNMENT ETHICS
COMMISSION,
*Respondent on review.*

(CA A31304; SC S32001)

712 P2d 87

Ridgway K. Foley, Jr., Portland, argued the cause for petitioner on review. With him on the petition were William H. Replogle and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the response to the petition were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

JONES, J.

Campbell, J., filed a dissenting opinion.

## JONES, J.

The issue in this case is whether petitioner, David Davidson, a public official, used his official position to obtain financial gain for himself within the meaning of ORS 244.040(1). This provision states:

"No public official shall use his official position or office to obtain financial gain for himself, other than official salary, honoraria or reimbursement of expenses, or for any member of his household, or for any business with which he or a member of his household is associated."

The Court of Appeals upheld a decision of the Oregon Government Ethics Commission (Commission) that the petitioner violated this statute. 74 Or App 160, 702 P2d 417 (1985). We affirm.

The Commission made the following findings: Davidson was a vice president and actuary of the State Accident Insurance Fund (SAIF), a public corporation. In 1982, SAIF's senior management, of which Davidson was a member, approved a plan to purchase a fleet of cars. Ultimate approval of the plan was vested in SAIF's board of directors. After bids for the cars were received, another vice president informed Davidson during a casual conversation that the quoted prices were "extraordinarily good" and would provide a SAIF employe with a good opportunity to purchase a car for his personal use as an "add-on" to the fleet purchase.

Concerned with any possible impropriety, Davidson asked SAIF's General Counsel for his informal legal opinion whether his purchase of a car would be proper. He was told there would be no ethical violation and Davidson subsequently ordered a car through SAIF's purchasing officer. Davidson reimbursed SAIF for the price it paid for the car. The transaction saved Davidson almost $1,300.

The Commission found that Davidson violated ORS 244.040(1) because he obtained a savings he would not have realized but for his position as a SAIF official, and ordered him to pay a forfeiture penalty of $2,575, twice the financial benefit.

Davidson petitioned the Court of Appeals for judicial review of the Commission's order. Under ORS 244.260(3), the Commission's order is a "contested case," and its order is

reviewable for legal errors under ORS 183.482(8)(a), which provides:

"The court may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, it shall:

(A) Set aside or modify the order; or

(B) Remand the case to the agency for further action under a correct interpretation of the provision of law."

The Court of Appeals affirmed the Commission's order, holding that the Commission's interpretation of the statute was compatible with the legislative policy to safeguard the public trust. ORS 244.010(1). Because the legislature delegated to the Commission the task of applying this statute, on judicial review we determine only whether the Commission's order is within the statutory text and policy.

## I. INTERPRETATION OF THE STATUTE

Davidson contended before the Commission that at the hearing on June 8, 1983, the state had rested its case and had proved no more than that he was a state employe and had received some financial benefit as the result of his "add on" purchase of a station wagon. He asserted that there was insufficient evidence to prove a "use" within the meaning of ORS 244.040(1). Davidson contended that the word "use" should be given its ordinary meaning and that, according to Webster's New World Dictionary, the verb "use" means

"* * * to put or bring into action or service; employ for or apply for a given purpose."

He maintained that this meaning of the verb "use" required the exercise, attempt to exercise, or at least promise to exercise powers, prerogatives or influence derived from the office.

The Commission found from the record of the hearing on June 8, 1983, that Davidson was a public employe, had received a financial benefit from the "add on" purchase of the station wagon, and had admitted that he took affirmative action to secure that benefit. Davidson testified at a previous hearing as follows:

"I asked our purchasing officer whether or not I could add a

car to * * * the order? She said she didn't feel that there was anything wrong with that. So, I said, 'I'd like to do that.' "

Thus, the Commission found that even accepting Davidson's proposed definition of the verb "use," his request, as a state public official, to the SAIF purchasing officer did "put or bring into action or service" and "employ for or apply to a given purpose," *i.e.*, the "add on" purchase of the station wagon. In its opinion, the Commission concluded that in doing so Davidson "used" his "official position" to purchase the station wagon at a price of $7,012, because it was clear from the evidence at the hearing on June 8, 1983, that the dealer would not have sold it to someone "off the street" at that price.

The Commission supported its conclusion by stating in its opinion:

"* * * In *Camenzind v. Freeland Furniture Co.*, 89 Or 158, 174 P 139 (1918), cited by [Davidson] in one of [his] memorandum briefs, the court not only quoted (at p. 181) from one dictionary a definition of the verb "use" consistent with that now urged by [Davidson], but went on to state as follows:

'Webster defines the word as:

"To make use of; to avail one's self of * * *."

'The Century Dictionary says that the term primarily means

"To employ for the attainment of some purpose or end; *avail one's self of.*" ' (Emphasis added.)

See also Black's Law Dictionary (4th ed 1951).

"In *Groener v. Oregon Government Ethics Commission*, 59 Or App 459, 651 P2d 736 (1982), the Oregon Court of Appeals, after referring to ORS chapter 244, held (at p. 467) that this Commission

'* * * is expressly authorized to interpret the statutory language, either in advance by advisory opinion, or after the fact in the adjudicatory process * * *.'

"Although, as pointed out by respondent, *Groener* did not decide the question presented in this case, the court also held (at p. 471) that the interpretation by the Commission of the word 'use' as including both 'direct and indirect' use, is 'within the plain, dictionary meaning of the term and is compatible with the legislative policy to safeguard the public trust.' Cf. *Smith et al v. Cameron et al*, 106 Or 1, 12-13, 210 P 716 (1922)."

The Commission then concluded that when Davidson asked the SAIF purchasing agent if he could "add a car" and said that he would "like to do that," it followed that Davidson at least "availed himself of" and set into motion the "add on" purchase of the station wagon at a price available only to him as a public official, and that by doing so he "used" his public office to obtain a financial gain for himself within the meaning of ORS 244.040(1).

In his appeal from the Commission decision, Davidson contends that the Commission has not proved the three elements of ORS 244.040(1): (1) a public official[1] (2) uses his office (3) to cause or realize a financial gain. Davidson admits that he was a public official and that he did realize a financial gain when he purchased the car. However, he asserts that he did not "use" his office in doing so. Davidson asserts before this court that (1) the statute prohibits only influence peddling, and (2) the use of the public office and the benefit received must be causally connected.

■■ The Commission's function and this court's function in interpreting statutes is to construe the language to give effect to the intent of the legislature. ORS 174.020; *State v. Wilson,* 277 Or 747, 750, 562 P2d 172 (1977). That is not done by consulting dictionary definitions of words, unless there is reason to believe that the legislature consulted the same dictionary. Dictionary definitions have subtle differences, and no single dictionary is authoritative. Nor are prior judicial interpretations of a word authority for its meaning in a different context. For instance, the statute interpreted in *Camenzind v. Freeland Furniture Co.,* 89 Or 158, 174 P 139 (1918), cited by the Commission, was an employers' liability act and referred to a duty to "use" machinery. It is not likely that the legislature, in enacting a Code of Ethics for public officials in 1974, "availed itself of" this court's quotation from a dictionary in a 1918 decision.

What the Court of Appeals wrote in *Groener v.*

---

[1] ORS 244.020(9) defines "public official" as

"* * * any person who is serving in a governmental capacity for the State of Oregon or any of its political subdivisions or any other public body of the state as an officer, employe, agent or otherwise, and irrespective of whether the person is compensated for such services."

*Oregon Gov't Ethics Comm.,* 59 Or App 459, 651 P2d 736 (1982), in exercising its review of questions of law under ORS 183.482(8)(a), was that the Commission's interpretation of "use" should be sustained because it was "within the plain, dictionary meanings of the term and [was] compatible with the legislative policy to safeguard the public trust." We agree. That policy is enunciated in ORS 244.010(1), which states:

> "The Legislative Assembly hereby declares that a public office is a public trust, and that as one safeguard for that trust, the people require all public officials to adhere to the code of ethics set forth in ORS 244.040."

Davidson argues that this legislative policy, when construed with the rest of the statute, was aimed solely at prohibiting influence peddling. The Commission responds that the policies inherent in the whole statute are not so restricted. Rather, the legislature intended a broader application to prohibit public employes from obtaining personal financial gain because of their public position.

The Court of Appeals interpreted the statute by giving the word "use" its common and ordinary meaning, *i.e.,* "to avail oneself of." Davidson asserts that the Court of Appeals incorrectly interpreted that word in a passive sense. He claims that "use" should be applied actively and that under such an interpretation he is not in violation of ORS 244.040(1) because he did not actively use his office to influence the car dealer to sell him a car at a discount. Further, he asserts that a similarly situated private individual could have received the same benefit since similar deals were available to any non-state employe or executive whose employer made a fleet purchase.

Davidson argues that the Court of Appeals dissent correctly defined "use" to refer to influence peddling when it stated that "use" meant "the actual or attempted exercise of the *power and influence* of an official position and the execution of the duties and responsibilities of a public office in order to achieve an improper financial gain." 74 Or App at 168 (emphasis in original). To support this interpretation, the dissent concluded that the evil to be cured in enacting ORS chapter 244 is the "misuse of the power and influence inherent in public office for private advantage." 74 Or App at 170. But private advantage can be gained through means other than

influence peddling. This is such a case.

■     Davidson used his public office because he "availed himself of" the add-on purchase by buying a car at a price available to him only as a public official. As a private citizen he could not have walked into the car dealership, asked for an add-on purchase fleet discount and received it. Only because he was an employe of SAIF did he qualify for the SAIF purchase price discount. The term "use" is not restricted only to influence peddling.

The concept of public trust extends to all matters within the duties of the public office. The broad policy of the ethics laws is to ensure that government employes do not gain personal financial advantage through their access to the assets and other attributes of government. Here, Davidson used his access as a SAIF executive to take advantage of SAIF's buying power to make a fleet purchase so he could obtain a personal financial gain.

Davidson's final attack on the Court of Appeals' interpretation of the statute is that it requires a finding of a causal connection between the use of the office and the benefit received. He loses on this score also because, as we have just stated, the Commission found that Davidson's use of his office did cause him to realize a financial gain. We agree with the Court of Appeals' statement that "but for his position, he would have been unable to purchase the car and thus to obtain a personal financial gain." 74 Or App at 165.

## II.   COMMISSION NOT ESTOPPED TO ASSERT STATUTORY VIOLATION

Davidson contends that he is entitled to rely on the advice of SAIF's General Counsel as state "legal services," under ORS 180.060,[2] advising Davidson of the propriety of the transaction. He further asserts that because the Commission and SAIF are both state agencies, equitable estoppel bars the Commission from asserting a statutory violation.

---

[2] ORS 180.060(5) provides that the Attorney General shall "perform all legal services for the state or any department or officer of the state." Davidson thus asserts that SAIF's General Counsel was acting within his authority delegated by the state Attorney General under ORS 180.235, which permits SAIF to employ its own counsel who performs the role of an assistant attorney general.

■      We find Davidson's equitable estoppel argument to be without merit. The Commission is not estopped to assert a claim inconsistent with a position taken by SAIF's General Counsel. The State of Oregon, while acting through one agency, is not bound by the actions of another agency that performs a different function. *Highway Commission v. Anderegg,* 241 Or 31, 36, 403 P2d 717 (1965).

■      ORS 244.280[3] provides the exclusive statutory procedure by which a public official in doubt about the propriety of a proposed transaction can resolve the questioned action by obtaining an advisory interpretation on the issue. Davidson did not utilize this procedure.

In the proposed order which the Commission adopted, the hearings officer correctly analyzed this statute, stating:

"We believe that the Oregon Legislature, in enacting ORS 244.280(2), intended that the procedure provided by that statutory provision for advisory opinions by this Commission, which is the agency charged by the legislature with the interpretation and enforcement of ORS ch. 244, shall be the only procedure upon which a state public official has a right to rely in such a case, and also intended that this Commission be the only state agency entitled to give advisory opinions relating to the interpretation and application of ORS ch. 244 upon which state public officials have a right to rely. We so interpret the provisions of ORS 244.280(2).

"It follows that [Davidson] had no right to rely upon the opinion by the SAIF General Counsel * * *."

---

[3] ORS 244.280 provides:

"(1) Upon the written request of any public official, candidate for public office or any person, or upon its own motion, the commission may issue and publish opinions on the requirements of this chapter, based on actual or hypothetical circumstances.

"(2) If any public official or business with which he is associated is in doubt whether a proposed transaction or action constitutes a violation of this chapter, the public official or the business may request in writing a determination from the commission. Within 60 days of receipt of the request, the commission shall issue an advisory interpretation on the question. The requester shall supply such information as the commission requests to enable it to issue the interpretation.

"(3) A public official or business with which he is associated shall not be liable under this chapter, for any action or transaction carried out in accordance with an advisory interpretation issued under subsection (2) of this section."

## III. STATUTE NOT UNCONSTITUTIONALLY VAGUE

Arguing that the statutory scheme of ORS chapter 244 is penal in nature, Davidson attacks the statute as unconstitutionally vague because it fails to provide adequate notice of prohibited conduct.

We last reviewed the question whether nonpenal statutes can be unconstitutional for vagueness in *Megdal v. Board of Dental Examiners,* 288 Or 293, 605 P2d 273 (1980). In *Megdal,* a dentist challenged a license revocation on the ground that the phrase "unprofessional conduct" was unconstitutionally vague as a standard for an administrative board to decide individual cases. This court wrote:

> "We may assume that petitioner could not be prosecuted for a statutory crime described only as 'unprofessional conduct.' But the same premises do not obviously apply to a revocation of his professional license under that standard. If loss of the right to practice one's profession were employed as a form of punishment for delinquencies apart from safeguarding proper performance in the professional role, the implications would go beyond the adequacy of the standard to issues of criminal procedure generally, *see Brown v. Multnomah County Dist. Ct.,* 280 Or 95, 100, 105, 570 P2d 52 (1977) and *cf. Dickinson v. Davis,* 277 Or 665, 670-671, 561 P2d 1019 (1977), if indeed its use for punishment would be constitutional at all. *Cf. Ex Parte A. H. Garland,* 71 US (4 Wall.) 333, 18 L Ed 366 (1867) (invalidating the disqualification of former Confederate supporters from law practice in federal courts). No doubt the disqualified person's loss is equally grave whether it is inflicted as punishment for wrongdoing or as enforcement of professional discipline. * * *" 288 Or at 299-300.

This court held that as a matter of statute rather than due process, the Board of Dental Examiners was required to explain the phrase "unprofessional conduct" by rulemaking before disciplining a dentist under that standard.

■ This case differs from *Megdal* in an important respect. The practice of dentistry and other occupations or activities require licenses to assure performance consistent with desired standards of safety, health or other protective policies. As we have written with respect to the practice of law, disciplinary rules and procedures that may result in partial,

temporary or permanent disqualifications from such occupations or activities are not designed to punish substandard conduct, although the impact on the individual may be greater than a minor penal sanction for an unrelated offense. A civil penalty, as in this case, is a penalty, not a protective disqualification or disciplinary reprimand directed at his employment. Yet it is not a "penal" sanction as that term has been used in decisions of the Supreme Court of the United States or of this court concerning vague penal laws.

But we need not pursue the question whether, since *Megdal,* there have been indications that due process also denies government the power to inflict civil penalties for violations of standards so vague that they "do not give fair notice of what they proscribe in time to let a person conform to the law," *see Megdal,* 288 Or at 298-99. The law enjoining one not to "use his official position or office to obtain financial gain" is not too vague. The rule against vagueness does not invalidate every law that leaves room for two or more interpretations on which legislators, lawyers and courts may differ; most laws do. Nor does the rule require that one must be able to predict with certainty the application of the law to every hypothetical set of facts. Here the chief question concerns the correct interpretation of the verb "use." Once the Commission's interpretation has been approved (or altered) by this court, any vagueness in that respect is eliminated, even though facts can be imagined in which the application of the statute remains debatable. We hold that this possibility does not invalidate the statute.

## IV. DAVIDSON NOT DENIED DUE PROCESS

Davidson asserts that he was denied his federal constitutional right to due process on the additional grounds that (a) he was not able to cross-examine witnesses at the Commission's preliminary hearing, and (b) the Commission should not have allowed a change in hearings officers during the contested case proceeding. ORS 244.260(3)[4] authorizes the

---

[4] ORS 244.260(3) provides:

"Hearings relating to any charge of alleged violation of this chapter may be held before the commission or before a hearings officer appointed by the commission. The procedure shall be that for a contested case under ORS 183.310 to 183.550."

Commission to investigate any violation of ORS chapter 244, to make findings, and to hold hearings relating to any charge of alleged violation. In addition, ORS 183.464(1) provides:

"Except as otherwise provided in subsections (1) to (4) of this section, unless a hearings officer is authorized or required by law or agency rule to issue a final order, the hearings officer shall prepare and serve on the agency and all parties to a contested case hearing a proposed order, including recommended findings of fact and conclusions of law. The proposed order shall become final after the 30th day following the date of service of the proposed order, unless the agency within that period issues an amended order."

The probable cause hearing is not a contested case under ORS 183.310(2)(a) since no individual legal right, duty or privilege is yet affected. Under the Commission's own administrative rule, OAR 199-20-035(3), it is required to find probable cause to justify further investigation of an alleged violation. The hearing is investigatory, not adversarial, and is directed at deciding whether probable cause exists. The probable cause hearing results in a determination of whether to charge a person with violation of ORS chapter 244. When the Commission votes to take formal action, the contested case procedural protections then become applicable. *See Fadeley v. Ethics Comm.,* 30 Or App 795, 801, 568 P2d 687 (1977).[5]

The procedures of a contested case hearing are codified in ORS 183.413 to 183.497. When a hearings officer hears a charge, he makes proposed findings of fact and conclusions of law to the Commission. Both parties are allowed to file exceptions to the hearings officer's proposed order before the Commission makes the final decision and order. ORS 183.460. The Commission may modify the proposed order, reject it and prepare its own, or adopt the proposed order as its own.

■ Davidson's federal due process claim concerning the probable cause hearing is without merit. He claims that he was denied the right to cross-examine witnesses and was denied access to the Secretary of State's audit[6] under which the

---

[5] *See Hannah v. Larche,* 363 US 420, 446, 80 S Ct 1502, 4 L Ed 2d 1307 (1960) (when "conducting nonadjudicative, fact-finding investigations, rights such as apprisal, confrontation, and cross-examination generally do not obtain").

[6] The audit is a public record, ORS 192.410(4), which every person has the right to inspect, ORS 192.420.

alleged violation was discovered. As we stated above, due process requirements do not apply to the probable cause hearing.

■        Davidson's categorization of the proceeding as quasi-criminal in nature also does not advance his argument. The Commission's finding of probable cause is similar to a district attorney's preparation of a criminal complaint. *Hannah v. Larche,* 363 US 420, 449, 80 S Ct 1502, 4 L Ed 2d 1307 (1960); *see, e.g., Fadeley v. Ethics Comm., supra,* 30 Or App at 801; *Tenney v. State Comm'n on Ethics,* 395 So 2d 1244, 1247 (Fla App 1977).· The preparation of an information or indictment does not require an adversarial hearing. Likewise, a probable cause hearing is not an adversarial hearing entitling Davidson to due process rights. *See Hannah,* 363 US at 442.

Davidson next asserts that the change of hearings officers during the contested case proceeding denied him federal due process. The Commission first appointed Karl Craine to preside over the contested case hearing. Craine's proposed order recommended that the complaint be dismissed because the Commission failed to introduce any evidence on whether Davidson had "used" his office. The Commission rejected the proposed order, which resulted in the continuation of the contested case hearing. The Commission decided to consider using other hearings officers to resume the hearing because of (1) scheduling problems, (2) potential disagreement with Craine's final proposed order, and (3) Craine's misunderstanding of the ethics statute. The Commission subsequently appointed retired Oregon Supreme Court Justice Thomas Tongue as the new hearings officer. The Commission adopted this hearings officer's proposed order, finding that Davidson violated ORS 244.040(1).

Davidson claims that the Commission was "judge-shopping" for a hearings officer who agreed with its interpretation of the statute. At the Commission meeting on October 24, 1983, counsel for Davidson objected strenuously to naming a hearings officer other than Craine, the original hearings officer, to conduct the hearing as resumed after the Commission rejected Craine's proposed order. Counsel objected, claiming the switch of hearings officers was "highly irregular," that there was no precedent for the Commission to make such a change of hearings officers, and that it was

improper for the Commission to "go shopping" for a hearings officer to get one "that you like."

At the hearing as resumed on December 14, 1983, that objection was repeated. In response to questions from the new hearings officer, counsel for Davidson agreed to have the testimony and exhibits offered at the hearing on June 8, 1983, retained as a part of the record, subject to such additional evidence as might be offered on resumption of the hearing.

Counsel agreed at that time that the Commission could have continued or resumed the proceedings at a hearing before the Commission itself. At no time did Davidson's counsel contend that Davidson had suffered prejudice in any specific manner as the result of the selection of a new hearings officer to resume the hearing or that the notice of the hearing was in any way defective.

Hearings Officer Tongue determined that it was proper for the Commission to consider the proposed order by Hearings Officer Craine at a meeting of the Commission and to decide whether to accept or reject that proposed order, which would have allowed Davidson's motion for a "summary determination." Having rejected that proposed order and denied that motion, the Commission properly ordered that the hearing, which had been recessed to enable Davidson to engage another attorney, be resumed for the purpose of receiving further testimony. Davidson conceded that the hearing could have been resumed for that purpose before the Commission itself.

Hearings Officer Tongue concluded:

"The selection by the Commission of a different hearing officer to conduct the hearing, as resumed, was unusual. Apparently, the Commission has never done so before. Neither, however, had the Commission been previously confronted with the problem presented in this case. It was not illegal for the Commission to do so, however, in view of its statutory power to have hearings conducted by hearing officers appointed by it, at least in the absence of claimed and demonstrated prejudice to [Davidson]. Such a hearing officer does not make findings of fact which are binding, if supported by evidence, as does a trial judge. * * *

"Also, as previously noted, [Davidson] has neither claimed nor demonstrated that he suffered prejudice in any specific

manner as the result of the selection of a new and different hearing officer to conduct the hearing as resumed. If there had been an issue of fact which depended upon the credibility of a witness, there might have been some basis for a claim of prejudice. See *Davis, Administrative Law in the Seventies* (1976) § 10.04, pp. 314-330. There was no such issue in this case and the facts of this case are substantially without dispute."

■   The hearings officer was correct. While such a change of hearings officers was unusual, Davidson has failed to establish bias or prejudice. To show bias or prejudice, Davidson must show not only that the Commission was predisposed to interpret the statute in a certain way, but that the Commission prejudged the facts of Davidson's case, *Trade Comm'n v. Cement Institute,* 333 US 683, 701-03, 68 S Ct 793, 92 L Ed 1010 (1948), was personally biased against Davidson, *Berger v. United States,* 255 US 22, 41 S Ct 230, 65 L Ed 481 (1921), or would gain financially, *Gibson v. Berryhill,* 411 US 564, 93 S Ct 1689, 36 L Ed 2d 488 (1973). *See also* Schwartz, Administrative Law 303-12, §§ 106-08 (1976). Davidson has not shown that the Commission was personally or financially biased.

## V.  CALCULATING FORFEITURE PENALTY

Lastly, Davidson contends that, even if the statute is constitutional and his conduct was in violation of law, the Commission failed to prove the amount of gain realized because there were too many variables to establish specifically what the car would have cost the average buyer. Thus, no penalty should have been assessed.

■   The Commission calculated the amount of gain based on evidence that a similar car would sell for $8,300 to the average buyer and that Davidson paid only $7,012.30. Therefore, substantial evidence showed that Davidson's gain was $1,287.70. The Commission properly imposed the penalty under ORS 244.360.

The Court of Appeals is affirmed.

**CAMPBELL, J.,** dissenting.

I dissent for the reasons set out in the dissenting opinions of Judge Buttler and Judge Warren in the Court of Appeals. 74 Or App 160, 702 P2d 417 (1985).