Argued and submitted May 16, 2002, reversed and remanded February 12, 2003

Samuel L. BUNTYN,
*Petitioner,*

*v.*

GOVERNMENT STANDARDS AND
PRACTICES COMMISSION,
*Respondent.*

99-216EJP; A115037

63 P3d 37

David Jay Lefkowitz argued the cause and filed the brief for petitioner.

Erika L. Hadlock, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

WOLLHEIM, J.

**WOLLHEIM, J.**

Petitioner Samuel Buntyn appeals from a final order issued by the Government Standards and Practices Commission (the commission). Petitioner assigns error to the commission's conclusions that he violated ORS 244.040(1)(a) and ORS 244.120(1)(c). We review for errors of law, ORS 183.482(8)(a), and hold that the commission erred in concluding that petitioner violated ORS 244.040(1)(a), but affirm the commission's conclusion that petitioner violated ORS 244.120(1)(c) and remand to the commission to determine the civil penalty and forfeiture, if any, to be imposed against petitioner, as consistent with this opinion.

The material facts are undisputed. Petitioner is employed by Reynolds School District (the district). In 1993, Ward Moyer, business director for the district, appointed petitioner to the position of day shift custodial supervisor. Larry Christian was petitioner's immediate supervisor and Moyer was Christian's immediate supervisor. Petitioner's responsibilities, as day shift custodial supervisor, included preparing written requisitions for purchase orders for janitorial supplies and repairs of janitorial equipment.

Most of the repair work and janitorial supplies for the district were provided by National Sanitary Company (National). The district was unsatisfied with National, and Moyer and Brian Case, the district's budget and accounting supervisor, were wanting to replace National because it was expensive and its service was neither always timely nor of high quality. In the meantime, the district continued to use National because it was the only company in the area that had an employee, Phil Love, who was factory authorized to perform warranty repairs on the district's equipment.

Love was not satisfied with his employment at National and was encouraged by Ron Borchers, an employee of a janitorial competitor, to start his own company. At some point, while speaking with Borchers, petitioner mentioned that his son, Scott Buntyn, was leaving his military service and was proficient in electrical work. Subsequently, Love and Scott formed a janitorial services and supply company called Northwest Floor Equipment (Northwest). Petitioner lent

Scott $3,000 as start-up capital for Northwest, a loan that has not yet been repaid, and petitioner was listed as co-owner of Northwest. Petitioner did not know that he was listed as co-owner of Northwest until early 1997. Petitioner was never involved in the operation or management of Northwest, and petitioner never received any compensation from Northwest.

In early 1996, Scott sent a letter to Moyer on Northwest letterhead. The letter indicated that Northwest hoped to obtain business from the district and stated that petitioner suggested that Scott introduce Northwest to the district. The letter also identified petitioner as Scott's father. Petitioner was aware of the letter and also orally informed Moyer, Christian, and Case of his relationship with Scott. Petitioner never concealed that relationship.

Between January 1996 and August 1997, petitioner, on approximately 44 occasions, initiated purchase order requisitions for materials and equipment repairs from Northwest. In nearly all of the 44 cases, the purchase order was signed by both Christian and Moyer. Of the 44 purchase order requisitions, approximately 21 of them resulted in services rendered by, and payment to, Northwest. The total amount of payments made by the district to Northwest was $4,224.90.

In July 1997, petitioner became the energy manager for the district, and Ken Pomerlau was responsible for preparing purchase orders and requisitions. Pomerlau continued to use Northwest because it provided good service at a reasonable price. It is not disputed that, from its inception, Northwest's prices have been below those of its competitors and that it is the best value for the district.

In October 1999, the commission received a complaint that petitioner was engaged in "illegal activities" and investigated. After its investigation, the commission made a preliminary finding that petitioner had violated the Oregon Government Standards and Practices Law, ORS chapter 244, and petitioner requested a hearing. The hearing officer issued a proposed order, finding no violation of ORS

244.040(1)(a) or ORS 244.120(1)(c). The commission subsequently rejected the proposed order, determined that petitioner had violated both statutes, and imposed a civil penalty of $8,800 and a $2,500 forfeiture.

Petitioner first assigns error to the commission's finding that he violated ORS 244.040(1)(a), which provides, in part:

> "No public official shall use or attempt to use official position or office to obtain financial gain or avoidance of financial detriment *that would not otherwise be available but for the public official's holding of the official position or office,* other than * * * reimbursement of expenses or an unsolicited award for professional achievement for the public official or the public official's relative, or for any business with which the public official or a relative of the public official is associated."

(Emphasis added.)

ORS 244.020(15) defines public official as including an employee of a public body, such as a school district. ORS 244.020(16) defines a public official's relative as including any child of the public official. As the commission correctly frames the issue, "the dispute between the commission and [petitioner] turns on the proper construction of ORS 244.040(1)(a), particularly the phrase 'that would not otherwise be available but for the public official's holding of the official position or office.' "

Petitioner contends that he did not violate ORS 244.040(1)(a) because the critical "but for" language "refers back to the financial gain or detriment avoided." Thus, petitioner contends,

> "once the official has been found to use or attempt to use his office to obtain financial gain for himself or a relative, the law requires [a determination as to] whether that gain would have been available to the recipient had the public official not held the position."

Petitioner asserts that the uncontroverted evidence in this case does not permit that determination. In particular, the

undisputed evidence shows that Northwest received the district's business, regardless of petitioner's official position, because it was the best, most cost-effective supplier.

The commission responds that petitioner's construction of the statute employs the wrong referent for the "but for" language. In the commission's view, "[p]roperly construed, that language defines the public official's *action* * * * it explains the meaning of the phrase 'use or attempt to use official position or office.' An official 'use[s]' his or her office by taking action that he or she could not take 'but for' holding that position." (Emphasis in original.)

The question presented is, thus, one of statutory construction and, accordingly, we employ the familiar framework of *PGE v. Bureau of Labor and Industries,* 317 Or 606, 859 P2d 1143 (1993). We turn first to the text and context of the statute to determine the proper referent for the pivotal "but for" language. If the intent of the legislature is clear after examining the text and context of the statute, "further inquiry is unnecessary." *Id.* at 611. We find the text of ORS 244.040(1)(a) to be unambiguous. The only plausible, common-sense reading of the statute, following conventional rules of grammar and syntax, is that the "but for" phrase refers to "financial gain": "No public official shall use or attempt to use official position or office to obtain financial gain or avoidance of financial detriment *that would not otherwise be available but for* the public official's holding of the official position or office * * *." (Emphasis added.) Given the use of "that," the phrase "would not otherwise be available but for the public official's holding of the official position" necessarily modifies the immediately preceding phrase, *viz.,* "financial gain or avoidance of financial detriment." Conversely, the commission's proposed construction that the "but for" phrase somehow refers to or modifies "use or attempt to use official position or office" is not persuasive.

Nevertheless, the commission relies on *Crocker and Crocker,* 332 Or 42, 22 P3d 759 (2001), to assert that we should not rely on a common-sense reading of the statute because one phrase of a sentence does not necessarily have to modify the preceding phrase and "the English language is not wholly inflexible." *Id.* at 49. In *Crocker,* an analysis of the

context of the statute at issue revealed that the statute had been adopted over a hundred years before. *Id.* at 50. The Supreme Court noted that "[w]e cannot say with any certainty that the conventions of punctuation most commonly used today also would have been used then." *Id.* Accordingly, the court proceeded to examine the logical outcomes that would follow from treating the phrase at issue as a unitary phrase without a comma (as the statute was written) or as two different phrases by adding a comma to the statute.

*Crocker* is inapposite. In contrast to the statute there, the phrase "that would not otherwise be available but for the public official's holding of the official position or office" was added to ORS 244.040(1)(d) as part of the 1993 "Omnibus Ethics Bill." Or Laws 1993, ch 743, § 9. Consequently, we can safely assume that the legislature followed the same rules of grammar, syntax, and punctuation in amending the statute in 1993 that we use today.

■        The commission next argues that, when viewed in the global context of the ethics statutes, ORS chapter 244, ORS 244.040(1)(a), and particularly the significance of the "but for" phrase, must be deemed ambiguous. In particular, the commission asserts that the statutory design expresses a broad legislative policy aimed at safeguarding the public trust. For example, ORS 244.010(1) states that "[t]he Legislative Assembly hereby declares that a public office is a public trust, and that as one safeguard for that trust, the people require all public officials to adhere to the code of ethics set forth in ORS 244.040." The commission argues that petitioner's interpretation of ORS 244.040(1)(a) would allow

"public officials to use their positions to obtain financial gain for themselves and their relatives, and would not subject them to discipline if they could establish, after the fact that they could have obtained the same benefit by some means other than use of public office."

We disagree. The plain meaning of the statute precludes public officials from arguing that they *could* have obtained the same benefit by means other than use of public office because the statute requires public officials to show that, notwithstanding their public office, they *would* have received the same benefit. ORS 244.040(1)(a) states that

"[n]o public official shall use or attempt to use official position or office to obtain financial gain or avoidance of financial detriment that *would* not otherwise be available but for the public official's holding of the official position or office * * *." (Emphasis added.) The commission's generalized policy concerns cannot alter or transcend the statute's explicit text. There is no ambiguity.

■      *Davidson v. Oregon Government Ethics Comm.*, 300 Or 415, 712 P2d 87 (1985), which analyzed ORS 244.040(1)(a) before it was amended in 1993, further supports our construction. In *Davidson*, the petitioner was a vice president of the public corporation State Accident Insurance Fund (SAIF). In the course of purchasing a fleet of cars for SAIF at a discounted price, the petitioner purchased a car for his personal use "as an 'add-on' to the fleet purchase." *Id.* at 417. The Supreme Court found that, as a private citizen, Davidson "could not have walked into the car dealership, asked for an add-on purchase fleet discount and received it. Only because he was an employee of SAIF did he qualify for the SAIF purchase price discount." *Id.* at 422. The court noted that it agreed "with the Court of Appeals' statement that 'but for his position, he would have been unable to purchase the car and thus to obtain a personal financial gain.' " *Id.* (citation omitted).

Thus, in *Davidson*, the court determined that the petitioner obtained a discount on his car because of his official position *and that he would not have obtained such a discount any other way.* In this case, however, the undisputed evidence establishes that Scott's company, Northwest, would have received the financial benefit *regardless* of petitioner's official position. The record is replete with evidence that Scott's company, Northwest, provided the best service to the school district at the best prices. In sum, the district would have hired Northwest regardless of petitioner's position with the district or participation in the contracting process. There is no evidence to the contrary.

Ordinarily, we would remand to allow the agency to apply the facts to our legal conclusions regarding ORS 244.040(1)(a). However, we are authorized to either set aside or modify the order *or* remand the case to the agency. ORS

183.482(8)(a); *see, e.g., Van Gordon v. Ore. State Bd. of Dental Examiners*, 52 Or App 749, 766-67, 629 P2d 848 (1981). In this case, we elect to set aside the order rather than remanding the case because the record is fully developed on this issue and the undisputed facts, as stated in the record, support only one conclusion.

Thus, the record provides us with enough evidence to dispose of the legal issue of whether petitioner violated ORS 244.040(1)(a). As noted above, the proper inquiry under the statutory "but for" language of ORS 244.040(1)(a) is whether there is a "financial gain that would not otherwise be available." The undisputed evidence shows that Northwest received the district's business because it provided better service at a lower price. The record shows that the district was unsatisfied with National, its previous supplier, and that it was looking to replace National with a less expensive, higher quality company. The only reason that the district continued to use National is because one of its employees was factory authorized to perform certain repairs on the district's equipment and that the same employee left National to become a cofounder of Northwest. Finally, even after petitioner became the district's energy manager, the district continued to use Northwest because it was a good, inexpensive company.

Given those undisputed facts, we conclude that, regardless of petitioner's official position with the district, Northwest would have benefitted financially. We therefore hold that the commission erred in determining that petitioner violated ORS 244.040(1)(a) and reverse the commission's order in that respect pursuant to ORS 183.482(8)(a).

In petitioner's second assignment of error, he argues that the commission erred in finding that petitioner committed 44 violations of ORS 244.120(1)(c) by failing to notify his appointing authority that he had a conflict of interest each time he initiated a transaction with Northwest.

ORS 244.120 states, in part:

"(1)   * * * when met with an actual or potential conflict of interest, a public official shall:

"* * * * *

"(c)    * * * notify in writing the person who appointed the public official to office of the nature of the conflict, and request that the appointing authority dispose of the matter giving rise to the conflict. Upon receipt of the request, the appointing authority shall designate within a reasonable time an alternate to dispose of the matter, or shall direct the official to dispose of the matter in a manner specified by the appointing authority."

To analyze ORS 244.120(1)(c), we again employ the *PGE* framework, beginning with the text and context of the statute. "[T]he text of the statutory provision itself is the starting point for interpretation and is the best evidence of the legislature's intent." *PGE*, 317 Or at 611. We hold that a plain reading of the statute supports the commission's conclusion that petitioner violated ORS 244.120(1)(c).

■    Petitioner argues that he complied with the provisions of ORS 244.120(1)(c) because he notified his appointing authority, Moyer, in writing via Scott's letter on Northwest letterhead and Scott's letter identified petitioner as Scott's father. However, the text of the statute requires that the *public official* provide the notification, and the letter did not give any indication that it was being written on behalf of petitioner. Furthermore, Scott's letter did not comport with the statute because the letter did not "request that the appointing authority dispose of the matter giving rise to the conflict."[1]

We thus hold that the commission did not err when it determined that petitioner violated ORS 244.120(1)(c).

As previously discussed, we have determined that the commission erred when it determined that petitioner violated ORS 244.040(1)(a). The commission's final order does not specify to what extent the $8,800 civil penalty and $2,500 forfeiture assigned against petitioner depended on petitioner's purported violation of ORS 244.040(1)(a), as opposed to his violation of ORS 244.120(1)(c). Consequently, a remand is required.

Reversed and remanded to redetermine penalty based solely on violation of ORS 244.120(1)(c).

---

[1] Petitioner makes other arguments that do not warrant discussion.