Argued and submitted July 27, reversed and remanded December 16, 1998, petition for review allowed April 13, 1999 (328 Or 418)

In the Matter of the Marriage of

Dennis James CROCKER,
*Respondent,*

*and*

Marianne Ellen CROCKER,
nka Marianne Ellen Groom,
*Appellant.*

(8706-64201; CA A99888)

971 P2d 469

Barry L. Adamson argued the cause for appellant. With him on the brief was Gregory B. Soriano.

Lawrence D. Gorin argued the cause and filed the brief for respondent.

Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and David Schuman, Deputy Attorney General, filed the brief *amici curiae* for the Oregon Attorney General and the Support Enforcement Division of the Department of Justice.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Mother appeals from a judgment dismissing her motion to modify child support. The trial court concluded that the statute authorizing the modification, ORS 107.108,[1] was unconstitutional. We reverse.

Mother and father were divorced in 1987. At that time, the parties' three daughters were ages 11, 8 and 5. The dissolution judgment awarded mother custody of the children and ordered father to pay $200 per month in child support for each child. On mother's motion, the court modified father's support obligation in 1995, ordering father to pay $239 per month in support for each of his minor daughters and $464 per month in support for the parties' oldest daughter, who had turned 18 and was attending school.

In 1997, mother moved to modify father's support obligation to account for the fact that the parties' second

---

[1] ORS 107.108 provides, in relevant part:

"(1). In addition to any other authority of the court, the court may enter an order against either parent, or both of them, to provide for the support or maintenance of a child attending school:

"(a) After the commencement of a suit for annulment or dissolution of a marriage or for separation from bed and board and before the decree therein;

"(b) In a decree of annulment or dissolution of a marriage or of separation from bed and board; and

"(c) During the pendency of an appeal taken from all or part of a decree rendered in pursuance of ORS 107.005 to 107.085, 107.095 to 107.174, 107.405, 107.425, 107.445 to 107.520, 107.540, 107.610 or this section.

"* * * * *

"(8) As used in this section, 'child attending school' means a child of the parties who is unmarried, is 18 years of age or older and under 21 years of age and is a student regularly attending school, community college, college or university, or regularly attending a course of professional or technical training designed to fit the child for gainful employment. A child enrolled in an educational course load of less than one-half that determined by the educational facility to constitute 'full-time' enrollment is not a 'child attending school.' "

The legislature amended ORS 107.108 in 1997. Or Laws 1997, ch 703, § 64. The trial court issued its final judgment in this case on October 15, 1997. Although the 1997 amendments to ORS 107.108 had taken effect on October 4, 1997, the court based its conclusion that the statute was unconstitutional on the 1995 version of the statute. The 1997 amendments to ORS 107.108 did not change the provisions at issue in this case. Nevertheless, because the 1997 version of the statute is now in effect, we decide the case based on the 1997 law. We also discuss ORS 108.110 and ORS 109.145 in our opinion, and our references to those statutes are to the 1997 versions of them as well.

daughter had turned 18 and was planning to attend college in California. Father moved to dismiss her motion on the ground that ORS 107.108, the statute that authorizes a court to order a divorced parent to support the parent's children while the children are attending school, is unconstitutional.

The trial court agreed with father. It concluded that "ORS 107.108 permits a child support obligation to be imposed" on "divorced or separated parents of qualifying children between ages 18 and 21" but not on married parents of children who have the same characteristics. The trial court also concluded that

"ORS 107.108 grants a privilege, *i.e.*, the right to seek and obtain an order compelling the payment of child support, to one class of citizens—qualifying children between ages 18 and 21 whose parents are divorced or separated—that is not granted to children in like circumstances whose parents are married."

Because it concluded that there was no rational basis for the distinction made by ORS 107.108, it concluded that the statute violated Article I, section 20, of the Oregon Constitution, and the Fourteenth Amendment to the United States Constitution. Accordingly, the trial court dismissed mother's motion to modify father's child support obligation. Mother appeals.

■ On appeal, mother, as well as the Oregon Attorney General and the Support Enforcement Division of the Department of Justice who appeared *amici curiae*, argue that ORS 107.108 does not violate either constitutional provision. Before turning to that issue, we need to address an issue that mother has raised about father's ability to challenge ORS 107.108. In its decision, the trial court focused on the privilege that ORS 107.108 grants to children of divorced or separated parents to obtain court-ordered support while they attend school. The court held that the grant of that privilege violated Article I, section 20, because there was no rational basis for the legislature's decision to give that privilege to children whose parents are divorced or separated while denying it to others. Mother argues that, because father is not a member of the disfavored class of children who are denied the

privilege of obtaining court-ordered support, he is not someone who can challenge the grant of the privilege to others. We disagree. Father is the divorced parent of children who are attending school, so he is subject to the requirement in ORS 107.108 that he provide court-ordered support to them. Because father is directly affected by the decision embodied in ORS 107.108 to grant a privilege to his children that is denied to others, he can challenge the grant of that privilege.

Moreover, the grant of the privilege of court-ordered support *to* children of divorced or separated parents embodies a corollary grant of an immunity *from* court-ordered support to parents who are not divorced or separated and who have children attending school. Father is a member of a disfavored class of parents who are denied that immunity, so he unquestionably is someone who can challenge the grant of that immunity. Based on the issues in this case, it does not matter whether we focus on whether ORS 107.108 violates Article I, section 20, or the Fourteenth Amendment, because it grants a privilege to some children that is denied to others or because it grants an immunity to some parents that is denied to others. Because the focus of father's arguments on appeal is on the immunity from court-ordered support that is given to married parents but denied to divorced or separated parents, we will focus on that immunity as well.

■     Article I, section 20, provides that

"[n]o law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

Father's challenge to ORS 107.108 is based on a contention that the statute grants an immunity to a class of people rather than to specific people, and that there is no rational basis for the distinction that the statute makes among classes of people.[2] Given that focus, father must establish the following in order to prevail on his claim that ORS 107.108 violates Article I, section 20: (1) that ORS 107.108 grants to a class of people an immunity that is not granted to the class to

---

[2] In other words, father does not contend that the class-based distinctions at issue in this case involve class characteristics that require anything other than an evaluation of whether there is a rational basis for them. *See, e.g., City of Lake Oswego v. $23,232.23 in Cash*, 121 Or App 432, 435-36, 855 P2d 201 (1993).

which father belongs; (2) that the class to which father belongs is a "true class," *i.e.*, one that is based on personal or social characteristics that exist independently of the distinctions created by the statute; and (3) that " 'the distinction between classes * * * has no rational foundation in light of the [statute's] purposes.' " *City of Lake Oswego*, 121 Or App at 435-36 (quoting *Northwest Advancement v. Bureau of Labor*, 96 Or App 133, 142, 772 P2d 934, *rev den* 308 Or 315 (1989), *cert den* 495 US 932 (1990).

We begin, then, with whether ORS 107.108 gives a class of people an immunity that is not given to father's class. ORS 107.108 gives courts authority to order divorced or separated parents to "provide for the support and maintenance" of their children attending school. In doing so, the statute appears to give children attending school whose parents are divorced or separated the privilege of obtaining court-ordered financial support that is not given to children attending school whose parents are or were never married. Conversely, it appears to give an immunity from such a support obligation to married parents and to parents who never married that it does not give to their divorced or separated counterparts. Father is a member of the latter class of parents, so it would appear, considering ORS 107.108 alone, that the legislature has granted an immunity to some classes of people that it has not given to father's class.

Considering the statute in context, however, suggests that that may not be the case. ORS 109.155 gives courts authority to order support for children attending school by parents who never married, so that class of parents is in the same position as are the parents in father's class.[3] Moreover,

---

[3] ORS 109.155 provides, in relevant part:

"(1) The court or the jury, in a private hearing, shall first determine the issue of paternity. If the respondent admits the paternity, such admission shall be reduced to writing, verified by the respondent and filed with the court. If the paternity is denied, corroborating evidence, in addition to the testimony of the parent or expectant parent, shall be required.

"(2) If the court or jury finds, from a preponderance of the evidence, that the petitioner or the respondent is the father of the child who has been, or who may be born out of wedlock, the court shall then proceed to a determination of the appropriate relief to be granted. * * *

"* * * * *

"(4) The court shall have the power to order either parent to pay such sum as it deems appropriate for the past and future support and maintenance of the

the state suggests that ORS 108.110 could be construed to authorize courts to require married parents of children attending school to support their children. If that were the case, there would be no difference in treatment among the relevant classes of people, because *all* parents of children attending school would be in the same position as are the parents in father's class.

■    ORS 108.110 provides, in relevant part:

> "(1)   *Any married person * * * may apply to the circuit court* of the county in which the married person resides or in which the spouse may be found *for an order upon the spouse to provide for support of the married person or for the support of minor children and children attending school, or both * * *.* The married person initiating the action for support * * * may apply for the order by filing in such county a petition setting forth the facts and circumstances upon which the married person relies for such order. If satisfied that a just cause exists, the court shall direct that the married person's spouse appear at a time set by the court to show cause why an order of support should not be entered in the matter. If it appears to the satisfaction of the court that the married person initiating the action for support is without funds to employ counsel and is otherwise unable to obtain counsel, the court may make an order directing the district attorney or, if appropriate, the Support Enforcement Division of the Department of Justice to prepare such petition and order to show cause. The provisions of 107.108 apply to an order entered under this section for the support of a child attending school.
>
> "(2)   As used in this section, 'child attending school' has the meaning given that term in ORS 107.108."

(Emphasis added.) Although the statute appears to apply to all married people, an examination of its history leads us to conclude that it applies only to married people who are living apart.

The legislature first enacted a provision permitting a court to order one spouse to support the other spouse and their children in 1889. The 1889 statute provided that "it

---

child during its minority and while the child is attending school, as described in ORS 107.108[.]"

shall be lawful for any married woman to apply to the circuit court of the county in which she resides for an order upon her husband to provide for her support and the support of her minor children, if any, by said husband living with her." Or Laws 1889, p 92, § 1. The legislature replaced that statute in 1939 with the following provision:

> "It shall be lawful for any married woman with minor children or children legally adopted to apply to the circuit court of the county in which she resides or to the circuit court of the county wherein her husband may be found for an order upon her husband, if such husband be the natural or adopted father of such children, to provide for her support and the support of her minor children, by filing in said county a petition setting forth the facts and circumstances upon which she relies for such order. If satisfied that a just cause exists, the court shall direct that a citation issue to the husband requiring him to appear at a time set by the court to show cause why an order of support should not be entered in the matter; and if it shall appear to the satisfaction of the court that such woman is without funds to employ counsel and is otherwise unable to obtain counsel, the court may make an order directing the district attorney to prepare such petition and citation."

OCLA 60-216(1). The Supreme Court interpreted that provision in 1940 and concluded that it did not apply to married women who live with their husbands. *Noble v. Noble*, 164 Or 538, 550, 103 P2d 293 (1940) (relief provided "available only to a married woman who is living separate and apart from her husband"). Under Oregon law, the court's interpretation of OCLA 60-216 became part of the statute. *See Stephens v. Bohlman*, 314 Or 344, 350 n 6, 838 P2d 600 (1992).

In 1953, the legislature repealed all preexisting statutes and enacted the Oregon Revised Statutes. Or Laws 1953, ch 3. At that time, OCLA 60-213 was repealed and reenacted as ORS 108.110. "In the legislature's general repeal and reenactment of statutes in 1953, it did not intend to make any substantive changes in the law. ORS 174.550." *Hughes v. State of Oregon*, 314 Or 1, 7 n 7, 838 P2d 1018 (1992) (emphasis omitted). Accordingly, we conclude that the requirement that spouses live apart in order to be entitled to relief under the statute remained a part of the statute when

it was reenacted in 1953. The legislature has amended the statute several times since then, including amendments that made the statute gender neutral, Or Laws 1975, ch 140, § 1, and that gave courts the authority to order married parents to support their children attending school, Or Laws 1973, ch 827, § 12(d).[4] However, none of the amendments suggests that the legislature intended to change the principle that the statute applies only to married couples who are living apart. Accordingly, we conclude that ORS 108.110 does not apply to married couples who are living together.

In sum, under the statutory scheme, families composed of married people who live together and who have at least one child attending school are treated differently from those composed of at least one such child whose parents are married. but do not live together, *see* ORS 108.110, are divorced or separated, *see* ORS 107.108, or have never married, *see* ORS 109.055. Relevant to this case, married parents who are living together are given an immunity from an obligation to support their children attending school that is not given to divorced or separated parents.

■■  Although father has established that ORS 107.108 treats parents who belong to his class differently from other parents, that difference in treatment does not implicate Article I, section 20, unless father's class is a "true class." *See Ag West Supply v. Hall*, 126 Or App 475, 478, 869 P2d 383 (1994).[5] A "true class" is a class comprising people who share characteristics that exist "apart from the law in question." *State v. Clark*, 291 Or 231, 240, 630 P2d 810 (1981). Generally, that means that the people in the class are treated differently from others based on their shared "antecedent personal or social characteristics or [their shared] societal status." *Hale v. Port of Portland*, 308 Or 508, 525, 783 P2d 506 (1989).

---

[4] Other amendments have given courts authority to order support for a spouse even when the couple has no children, Or Laws 1963, ch 497, § 1, and have given the state the authority to seek support on behalf of spouses and children, Or Laws 1975, ch 458, § 13.

[5] If a class is created by the challenged law itself, it is sometimes said to be a "pseudo-class." Such classes "are entitled to no special protection and, in fact, are not even considered to be classes for purposes of Article I, section 20." *Sealey v. Hicks*, 309 Or 387, 397, 788 P2d 435, *cert den* 498 US 819 (1990).

We conclude that father is a member of a "true class." The class comprises people who, like father, are divorced parents of children attending school. They can be identified by their status as divorced parents of such children and not by the challenged law. Because father and the other members of his class could still be identified by their shared personal characteristics if the legislature repealed ORS 107.108, they comprise a "true class."

■ Because ORS 107.108 can be understood to give an immunity to married, cohabiting parents of children attending school that it does not give to father's "true class," we must determine whether the difference in treatment between the two classes of parents violates Article I, section 20. Father does not contend, and the trial court did not conclude, that the classifications in this case are based on characteristics that require anything other than an evaluation for whether there is a rational basis for the distinction that the legislature has made among classes of people. Consequently, we consider only whether ORS 107.108 violates Article I, section 20, on the ground that there is no rational basis for the distinction that it draws. *Seto v. Tri-County Metro. Transportation Dist.*, 311 Or 456, 467, 814 P2d 1060 (1991).

Father does not dispute that the state has an interest in having a well-educated populace. Although children aged 18 to 21 have no general right to have their parents pay for them to attend school, it cannot reasonably be disputed that the state has an interest in having parents support their children in that endeavor. ORS 107.108 advances that interest by providing the means for some children to attend school. The issue, then, is whether the statutory scheme by which the state has chosen to advance that interest—a scheme that distinguishes among true classes—is rational. Father argues that it is not. He notes that many children attending school are in need of financial support and argues that there is no rational reason to target for assistance only those children whose parents are divorced, separated, or unmarried or are married but living apart. The trial court agreed. We do not.

We conclude that the statutory distinction is rational. Even if most divorced or separated parents could

cooperate sufficiently to decide whether to support their children attending school, legislators could rationally believe that, because of the nature of divorce and separation, there will be instances in which children will not receive support from their parents to attend school precisely because the parents are divorced or separated, despite the fact that the parents have the resources to provide the support and it is in the children's best interest for them to do so. It might be that, although both parents agree that they should support their child attending school, they disagree on how much each of them should contribute, so that one or both of them contribute nothing. It might be that the nature of the relationship between the parents is so acrimonious that they refuse to agree on anything. It might be that the parent who did not have custody when the child was a minor is unwilling to provide support precisely because he or she did not have custody. It might be that one of the parents who, when married, considered support for his or her child attending school to be a moral obligation, now considers it to be only a legal obligation and, hence, that the parent will provide support only if ordered to do so by a court. In short, legislators could rationally envision situations in which, *but for* the fact that a child's parents are divorced or separated, the parents would support the child while the child attends school. In that situation, the parents' marital status operates to thwart the state's interest in having parents support their children while the children are attending school. Providing courts with the authority to require those parents to support their children attending school is a rational response to that problem.

Deciding not to give courts authority to require parents from intact families to provide the same support is rational as well. Legislators could rationally assume that, in most instances, parents in intact families will be able to make reasonable decisions about whether to support their children attending school. Moreover, whatever the reasons those parents might decide *not* to provide that support, legislators could rationally believe that there will seldom be a situation in which, *but for* the fact that a child's parents are married and living together, the parents would have provided financial support to their child while the child attends school. In other words, the marital status of parents who are

living together would not be expected to make them less willing to support their children attending school, but the marital status of divorced or separated parents could have that effect.

In sum, legislators could rationally believe that the most efficient way to advance the state's interest in having parents support their children attending school is to rely on parents to make those decisions in intact families and on courts to make those decision for families that are not intact. That policy decision does not become irrational simply because, on occasion, some married parents who have the resources to support their children attending school will refuse to do so. Nor does it become irrational simply because, under ORS 107.108, on occasion, a court may require separated or divorced parents to support their children attending school even when the parents' refusal to provide that support is for reasons completely unrelated to the separation or divorce. A statute does not have to be perfect in order for it to be rational. In other words, there does not have to be a perfect correlation between the state's interest and the means it uses to advance that interest. To a certain extent, the statute can be underinclusive or overinclusive, as long as the distinction that it makes among classes is reasonably related to a legitimate state interest.[6] As we have already explained, ORS 107.108 is reasonably related to such an interest.

The distinction embodied in the statutes governing support for children attending school is analogous to the distinction that the legislature has made between married and divorced parents with respect to support for their minor children. Every parent has an obligation to care for his or her minor child. The state has a legitimate interest in ensuring that parents fulfill that obligation. Nonetheless, when a child's parents are married, the state generally does not interfere with the parents' decisions on how best to meet their financial obligations to their children. However, when parents divorce or separate, the state assumes that, as a result of the divorce or separation, many of them will no longer be able to work together to make responsible decisions

---

[6] This discussion assumes, of course, that the distinction does not involve invidious social or political premises.

about how to support their children. Accordingly, the state does not wait to see whether, despite the divorce or separation, the parents can decide how to meet their financial obligations to their children. Instead, it steps in to dictate how they will do that by authorizing courts to enter support orders that establish how much money each parent must contribute each month toward the care of the parent's children. *See* ORS 107.105(1)(c). Even though some married parents do not make appropriate decisions about how to care for their children and many divorced parents unquestionably do make appropriate decisions, the state has distinguished between parents with respect to their child-support obligations based on their marital status. Although not perfect, the distinction is rationally related to a legitimate state interest. So is the one in this case.

In conclusion, many children pursue some form of education after they reach the age of 18. The state has an interest in having parents support their children in those efforts. In countless situations, children attending school continue to rely on their parents for financial support, whether their parents are married, separated, or divorced or have never married. Unquestionably, there will be occasions when parents from all of those classes will refuse to support their children attending school even though they have the means to do so. Even if ORS 107.108 does not provide a perfect remedy for that problem, it represents a reasonable attempt by the legislature to address the situation in which the refusal by parents to support their children attending school is a direct consequence of the parents' divorce or separation. Therefore, we conclude that the distinction drawn by the legislature among classes of parents has a rational basis and does not violate Article I, section 20, on the ground that it lacks one.

The trial court also concluded that ORS 107.108 violates the Equal Protection Clause of the Fourteenth Amendment. That clause provides that

"[n]o state shall * * * deny to any person within its jurisdiction the equal protection of the laws."

Father does not argue that the statutory distinctions made among parents with respect to support of their children

attending school involve suspect classifications or infringe on a fundamental right. Hence, our review under the Fourteenth Amendment turns on whether "the legislative classification bears a rational relation to some legitimate end." *Romer v. Evans*, 517 US 620, 631, 116 S Ct 1620, 1627, 134 L Ed 2d 855 (1996). As we have already explained, the manner in which ORS 107.108 targets children attending school whose parents are divorced or separated is rationally related to the state's interest in having a well-educated populace. Therefore, we conclude that the trial court erred when it concluded that ORS 107.108 violates the Equal Protection Clause of the Fourteenth Amendment.

Reversed and remanded.