Argued and submitted November 8, 1999; reassigned December 19, 2000, decision of Court of Appeals affirmed; order of circuit court reversed April 26, 2001

In the Matter of the Marriage of

Dennis James CROCKER,
*Petitioner on Review,*

*and*

Marianne Ellen CROCKER,
nka Marianne Ellen Groom,
*Respondent on Review.*

(CC 8706-64201; CA A99888; SC S46166)

22 P3d 759

Lawrence D. Gorin, Portland, argued the cause and filed the briefs for petitioner on review.

Dawn M. Lagrone, Certified Law Clerk, Portland, argued the cause for respondent on review. Gregory B. Soriano, Portland, filed the response. Gregory B. Soriano and Dawn M. Lagrone, filed the brief on the merits for respondent on review.

Philip F. Schuster, II, and Roger F. Dierking, of Dierking & Schuster, Portland, filed a brief on behalf of *amicus curiae* Dierking & Schuster.

Charles F. Hinkle, of Stoel Rives LLP, Portland, filed a brief on behalf of *amicus curiae* Daniel Case McGinley.

David Schuman, Deputy Attorney General, and Hardy Myers, Attorney General, Salem, filed a brief on behalf of *amicus curiae* State of Oregon.

Before Carson, Chief Justice, and Gillette, Durham, Kulongoski, Leeson, and Riggs, Justices.**

GILLETTE, J.

---

** Van Hoomissen, J., retired December 31, 2000, and did not participate in the decision of this case; De Muniz, J., did not participate in the consideration or decision of this case.

## GILLETTE, J.

The issue in this domestic relations case is whether a court may order a divorced parent to provide support for his or her child between 18 and 21 years of age attending school. Father maintains that ORS 107.108(1),[1] the statute that permits such an order, is unconstitutional under Article I, section 20, of the Oregon Constitution, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.[2] The trial court held that the statute is unconstitutional on both grounds. The Court of Appeals reversed. *Crocker and Crocker*, 157 Or App 651, 971 P2d 469 (1998). For the reasons that follow, we affirm the decision of the Court of Appeals.

The relevant facts are as follows. Father and mother were divorced in 1987. At that time, the parties' three children were ages eleven, eight, and five. The dissolution judgment awarded mother custody of the children and ordered father to pay $200 monthly child support for each child. In 1995, at mother's request, the court modified father's support

---

[1] ORS 107.108 provides, in part:

"(1) In addition to any other authority of the court [that has jurisdiction over dissolution, separation, or annulment proceedings], *the court may enter an order against either parent, or both of them, to provide for the support or maintenance of a child attending school*:

"(a) After the commencement of a suit for annulment or dissolution of a marriage or for separation from bed and board and before the decree therein;

"(b) In a decree of annulment or dissolution of a marriage or of separation from bed and board; and

"(c) During the pendency of an appeal taken from all or part of a decree rendered in pursuance of ORS 107.005 to 107.085, 107.095 to 107.174, 107.405, 107.425, 107.445 to 107.520, 107.540, 107.610 or this section.

"* * * * *

"(8) As used in this section, 'child attending school' means a child of the parties who is unmarried, is 18 years of age or older and under 21 years of age and is a student regularly attending school, community college, college or university, or regularly attending a course of professional or technical training designed to fit the child for gainful employment. * * *"

(Emphasis added.)

[2] Article I, section 20, of the Oregon Constitution, provides: "No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens." The Equal Protection Clause of the Fourteenth Amendment provides: "No State shall * * * deny to any person within its jurisdiction the equal protection of the laws."

obligation, ordering him to pay $942 in support for all three children, including the oldest child, who at that time was attending college.

In 1997, when the parties' second child had turned 18 and was planning to attend college, mother again moved to modify father's child-support obligation. Father opposed mother's motion, arguing that ORS 107.108(1) was unconstitutional.

The trial court granted father's motion, stating:

"ORS 107.108 permits a child support obligation to be imposed upon one class of citizens—divorced or separated parents of qualifying children between ages 18 and 21, as specified in ORS 107.108(4)—while no provision exists permitting such an obligation to be imposed in like circumstances upon married parents[.]"

Concluding that there was no rational basis for the distinction made by ORS 107.108, the trial court held that the statute violated both Article I, section 20, of the Oregon Constitution, and the Equal Protection Clause of the Fourteenth Amendment. Accordingly, the court dismissed mother's motion. Mother appealed.

On appeal, the Court of Appeals reversed the decision of trial court, holding that, under Article I, section 20, and the Equal Protection Clause, there was a rational basis for a distinction between divorced parents and cohabiting married parents. *Crocker*, 157 Or App at 660-64. We allowed father's petition for review.

■ Although the parties have presented and argued this case solely on constitutional grounds, this court ordinarily will not decide constitutional questions when an adequate subconstitutional basis for decision exists. *See, e.g., Leo v. Keisling*, 327 Or 556, 560, 964 P2d 1023 (1998) (constitutional issues should not be decided when there is adequate statutory basis for decision); *City of Portland v. Tidyman*, 306 Or 174, 180, 759 P2d 242 (1988) (when state statute resolves issue in case, court will not reach constitutional claim). Of course, the task of deciding a case on a subconstitutional basis is complicated significantly when the parties offer no help concerning any possible statutory or other basis on

which the case can be decided. We nonetheless ordinarily will attempt to identify such a basis, if possible.

In the present case, one such possibility is mentioned, if only in passing, in the brief *amicus curiae* that was filed by the State of Oregon. That brief states:

> "The logical predicate to Father's constitutional attack is the assumption that, under Oregon law, some parents (those in intact marriages) receive treatment that is unjustifiably better tha[n] the treatment received by others (those in broken marriages): the latter but not the former may be legally compelled to support their 18- to 21-year-old children attending school. In fact, the constitutional issue of equal treatment may not arise at all in this case because the predicate assumption may not be true. If Oregon laws provide that a married parent or parents may also be subjected to a judicial decree mandating support of 18- to 21-year-old children attending school, then the two classes—parents in intact marriages and parents in broken marriages—are treated equally under the law. That issue has not been definitively addressed by this court. For example, ORS 108.110 provides: '(1) Any married person * * * may apply to the circuit court * * * for the support of minor children and children attending school. * * * (2) As used in this section, "child attending school" has the meaning given that term in ORS 107.108.' * * * Neither the statute nor the case law interpreting it specify that the 'married person' referred to must be non-cohabiting."

The Court of Appeals, responding to a similar footnote in the state's *amicus* brief in that court, examined the statutory issue in detail. *Crocker*, 157 Or App at 657-59. The court's research took it back to the predecessor statute to ORS 108.110, first enacted in 1889, and followed it through to the present day. *Id.* Pivotal to that court's analysis was the fact that this court, in construing the predecessor statute, had stated that the statute did not apply to married women who live with their husbands. *Id.* at 658 (citing *Noble v. Noble*, 164 Or 538, 550, 103 P2d 293 (1940)). The Court of Appeals then searched for any legislative change to that interpretation. Finding none, it concluded that ORS 108.110 applies to only married persons who are not cohabiting. *Id.* at 658-59. It followed, the court reasoned, that the logical predicate to father's argument could not be refuted on statutory

grounds. *Id.* at 659. That is, father correctly asserted that cohabiting married parents have a privilege that father does not have, *viz.*, that one cohabiting parent cannot be ordered, on the petition of the other cohabiting parent, to support a child attending school. As we shall explain, we agree with the Court of Appeals that ORS 108.110 does not solve this problem, but our analysis differs slightly.

We begin by noting that several Oregon statutes contain rules respecting parental duties of support for children attending school. For example, ORS 107.108 gives courts authority to order divorced or legally separated parents, or parents whose marriage has been annulled, to support their children attending school. ORS 109.155(4) authorizes courts to order parents who never married to support their children attending school. And, as noted, ORS 108.110 gives courts authority to order married parents to support their children attending school. As to the last statute, however, the question arises—*all* married parents, or only those who live separately? We turn to that question.

■    As is true in any other case of statutory interpretation, we begin with the text and context of the statute. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) (setting out methodology).

ORS 108.110 provides, in part:

> "(1)   *Any married person* * * * may apply to the circuit court of the county in which the married person resides or in which the spouse may be found for an order upon the spouse to provide for support of the married person or for the support of minor children and children attending school, or both * * *. * * *
>
> "(2)   As used in this section, 'child attending school' has the meaning given that term in ORS 107.108."[3]

(Emphasis added.) The emphasized phrase, "[a]ny married person," standing alone, sweeps with the widest possible net. The right to which it speaks is not limited by such qualifying

---

[3] The judgment in this case was entered in January 1997. Thereafter, the 1997 Legislature amended ORS 108.110, as quoted in the text above. The 1997 amendments do not affect our analysis in this case; consequently, we proceed to analyze the current version of the statute.

clauses as, "not cohabiting with the married person's spouse," or the like. The phrase does not stand alone, however.

■  Under the *PGE* paradigm, we consider earlier versions of a statute, as well as case law concerning that statute and the earlier versions of it, as part of our first level of analysis. *See State v. Toevs*, 327 Or 525, 532, 964 P2d 1007 (1998) (first level of analysis includes case law); *Krieger v. Just*, 319 Or 328, 336, 876 P2d 754 (1994) (context includes earlier versions of same statute). We turn to the evolutionary history of ORS 108.110.

The statute that has evolved into the present version of ORS 108.110 first was adopted in 1889. That statute provided:

> "[I]t shall be lawful for any married woman to apply to the circuit court of the county in which she resides for an order upon her husband to provide for her support and the support of her minor children, if any, by said husband living with her."

Oregon Laws 1889, p 92.

■  We begin our examination of the statute by addressing a linguistic puzzle that is inherent in its wording. The statute refers to "the support of [any married woman's] minor children, if any, by said husband *living with her*." (Emphasis added.) What word does the emphasized phrase modify? If it modifies the immediately preceding noun, "husband," then the statute even in 1889 contemplated an action between cohabiting spouses. If, on the other hand, the phrase modifies the noun "children," then the constitutional issue that the parties have argued is, in fact, presented by this case.

By ordinary present-day usage, the more likely reading would be that the phrase "living with her" modifies "husband." That is true, because there is no comma between "husband" and "living." If, instead, the phrase was intended to modify "children," then we would expect to find a comma between "husband" and "living." Absent the comma, the ordinary present-day reading of the statute would treat the six words, "by said husband living with her," as a single phrase. We say "ordinary," however, because the English language is not wholly inflexible.

The problem is not simplified by the fact that the statutory wording was adopted, not today, but 112 years ago. We cannot say with any certainty that the conventions of punctuation most commonly used today also would have been used then. Indeed, anyone familiar with late nineteenth-century prose, whether professional or artistic, would acknowledge that punctuation practices in vogue at the time were not necessarily the same ones that are in use today.

Examining the outcome that would follow from treating the phrase, "by said husband living with her" as a unitary phrase assists our inquiry. If that phrase was intended to be unitary, then two consequences follow: (1) there is no similar statutory obligation on the part of a husband living apart from his wife; and (2) the statute does not speak at all to where the children are living. In our view, neither consequence makes sense.

The first consequence is nonsensical, because it fails to deal with the circumstance in which the problem of non-support most likely would arise, *viz.*, when the husband was absent. When absent, the husband would not be subject to the pressures that inhere in sharing a home with those who were dependent on him.

The second consequence appears to be another unlikely legislative choice: The *husband* must be residing with the wife, but her children need not be. Again, such a policy choice is backwards. If her children are not residing with her, then the wife does not have the same responsibility to care for them. If, on the other hand, it is the children—not the husband—who are residing with her, then the wife's needs are obvious and pressing.

Neither of the foregoing consequences is presented if the six words, "by said husband living with her," are read as *two* phrases, with a comma assumed between the words, "husband" and "living." The phrase "living with her" then modifies the word "children." After reviewing the 1889 statutory wording in light of the competing consequences that would flow from the two alternative plausible readings of the statute, we conclude that the latter reading is the correct one:

The phrase, "living with her," modified "children," not "husband." The balance of this opinion proceeds on that assumption.

Our determination that the phrase, "living with her," originally modified the word "children" goes a long way toward resolving the central problem of this case, *viz.*, the scope of the concept, "any married woman," in the original statute. The word "any" ordinarily would have a very broad sweep, including within it both married women who were cohabiting with their husbands and those who were not cohabiting with their husbands. But here, as we have shown, the legislature used the phrase, "living with her." And, as used, the phrase referred to her children, not to her husband. The most reasonable reading of the 1889 statute, then, would be that the statute contemplated circumstances in which the husband was *not* living with the wife.

That was the way that this court previously described the 1889 statute. In *Fowler v. Fowler*, 31 Or 65, 67, 49 P 589 (1897), this court stated that the statutory authorization went only to married women who were not cohabiting with their husbands:

> "In her petition the plaintiff avers that she is living separate and apart from defendant, and that such separation is without fault on her part * * *. To entitle a wife living separate and apart from her husband to prevail in a proceeding under this statute, she must not only allege, but must show by competent evidence, that the separation is without her fault, and that the husband has, without just cause, neglected or refused to support her. The statute was not designed to change the rule of the common law as to the liability of the husband for the support of his wife living apart from him. It was intended to give her a remedy directly against him, instead of having it worked out through some third person, as it had to be at common law. *But it is only in cases where the husband could be compelled at common law to pay for necessaries furnished his wife, living separate and apart from him, that she is entitled to an order for support under this statute.*"

(Emphasis added.) Thus, it was established authoritatively and soon after its adoption that the coverage of the original statute extended only to married women who lived apart

from their husbands and otherwise were qualified to receive an order of support.

The 1889 statute underwent several iterations after the *Fowler* decision. *See Noble*, 164 Or at 542-44, 547-49 (reviewing that history). By 1938, the law was codified as section 33-207, Oregon Code 1930. *Noble*, 164 Or at 543. Then, in 1939, the legislature essentially re-enacted the measure. The 1939 measure provided, in part:

> "It shall be lawful for any married woman with minor children or children legally adopted to apply to the circuit court of the county in which she resides or to the circuit court of the county wherein her husband may be found for an order upon her husband, if such husband be the natural or adopted father of such children, to provide for her support and the support of her minor children * * *."

*Noble*, 164 Or at 548 (quoting Or Laws 1939, ch 361, § 1).

This court addressed the 1939 measure in *Noble*, a case involving an appeal by a husband from trial court orders directing the husband to pay support for his wife and the parties' minor children. The court held that the later-enacted session law contained "no inconsistency whatever" with the earlier law. 164 Or at 549. The mother, who wished to be paid support for her children, but had not pled in her petition that the children at the time were residing with her, argued that there was a conflict between the wording of the then-applicable statute and its predecessor. This court rejected that idea:

> "[W]e think that the language of the later act, in so far as it provides for the support of minor children, should be restrained to cases of children who are living with their mother. *It must be assumed that the legislature was aware of the construction which this court had placed upon an existing statute upon the same subject, and, consequently, that it was intended to make the relief provided for available only to a married woman who is living separate and apart from her husband because of the latter's fault.* If we hold that the asserted repeal [by implication, for which mother was contending] has taken place, it would follow that in those circumstances the court has been empowered—as was done here—to require the husband to pay to his wife

money for the support of their children, notwithstanding the children are in the husband's custody."

*Id.* at 550 (emphasis added). It may be debated whether the emphasized part of the foregoing quotation was a holding or only a *dictum* but, if it were the latter, then the court went out of its way to remind the legislature of the limitation that its previous decision in *Fowler* had placed on the scope of the statute.

After this court's decision in *Noble*, the statute underwent further technical revisions that, *inter alia*, removed as surplusage the phrase, "[i]t shall be lawful for." The measure was recodified in 1953 to its present iteration as ORS 108.110, *see* ORS 108.110 (1953); the term "married woman" later was changed to "married person." Or Laws 1975, ch 140, § 1. We are aware of no legislative enactment, either before or after *Noble*, that did anything to place in question the fundamental assumption underlying the statute that this court had first made in *Fowler*, *viz.*, that the statutory remedy was available to only a married person who was not cohabiting with that persons's spouse.

Additional statutory context further strengthens our conclusion. ORS 108.120 provides, in part:

"(1) After the hearing of the petition [brought by a married person for support of children attending school] the court shall make an order granting or denying it and fixing, if allowed, the terms and amount of the support.

"\* \* \* \* \*

"(3) The decree or order is a final judgment \* \* \*. \* \* \* However, the court may allow a credit against child support arrearages for periods of time, excluding reasonable parenting time unless otherwise provided by order or decree, *during which the obligated parent has physical custody of the child with the knowledge and consent of the custodial parent.*"

(Emphasis added.) The emphasized wording, by its references to "physical custody" and "custodial parent," demonstrates that the statute refers to parents who, although married, are not cohabiting.

Based on the foregoing discussion of the text and context of ORS 108.110, we conclude that the question whether the legislature intended that statute to operate only in the case of parents who were not cohabiting can be answered at the first level of the *PGE* analysis: The legislature did intend to limit ORS 108.110 to parents who are not cohabiting. It follows that the constitutional issues advanced by father, respecting ORS 107.108(1), are presented by this case. We turn to those issues.

We address first father's challenge to ORS 107.108(1) under the Oregon Constitution. An equal-privileges analysis in this context under Article I, section 20, requires us to determine: (1) whether the legislature had authority to act; (2) whether one class of persons receives privileges that the other does not; and (3) whether the disparate treatment had a rational basis. *See Seto v. Tri-County Metro. Transportation Dist.*, 311 Or 456, 467, 814 P2d 1060 (1991) (stating issue as "whether the legislature had authority to act and whether the classification has a rational basis").

■ The legislature has the authority to enact legislation regarding marriage, divorce, and paternity, as well as parental support of and educational duties toward children. *See, e.g.*, *State v. Bailey*, 115 Or 428, 236 P 1053 (1925) (statute criminalizing husband's failure to support wife and children was valid exercise of legislative power). Thus, the legislature had authority to enact the type of legislation at issue here.

■ The equal privileges and immunities clause scrutinizes benefits in the form of privileges and immunities given to a particular class, rather than discrimination against a particular class:

> "The original target of this constitutional prohibition was the abuse of governmental authority to provide special privileges or immunities *for* favored individuals or classes, not discrimination *against* disfavored ones. *See State v. Savage*, 96 Or 53, 59, 184 P 567 (1920) (Article I, section 20, is 'antithesis' of Fourteenth Amendment's equal protection clause). This perspective bears on the section's interpretation of what is a favored 'class' under the section. A person who is denied what a favored class receives has standing to demand equal treatment, though this leaves an issue whether to strike down the special privilege or to extend it beyond the favored class."

*Hale v. Port of Portland*, 308 Or 508, 524-25, 783 P2d 506 (1989) (emphasis in original). Under the equal-privileges doctrine, the classification must be based on the personal or social characteristics of the asserted "class." *Id.* at 525. When distinctions are based on personal characteristics that are not immutable, this court reviews the classification for whether the legislature had a rational basis for making the distinction. *See Seto*, 311 Or at 466-67 (geographic classification reviewed for rational basis); *Hewitt v. SAIF*, 294 Or 33, 45, 653 P2d 970 (1982) (classifications based on immutable traits are suspect). Marital status is not an immutable trait. Thus, to withstand constitutional scrutiny under Article I, section 20, it is necessary only that the statute in question be based on rational criteria.

We turn to the issue whether there is a rational basis for treating the class of which father is a member in the way that it is treated under the statute. The answer to that question is not difficult. A legislator rationally could believe that households in which the parents do not live together might need judicial assistance in making educational decisions, because the absence of cohabitation itself likely reflects a lack of harmony and consensus in parental decision-making. There is no basis for invalidating ORS 107.108(1) under Article I, section 20, of the Oregon Constitution.[4]

It likewise is true that, under the federal Equal Protection Clause, father must show that the legislative classification to which he objects lacks a "rational relation to some legitimate end." *Romer v. Evans*, 517 US 620, 631, 116 S Ct 1620, 134 L Ed 2d 855 (1996). We think that the constitutional analysis that we have advanced under Article I, section 20, of the Oregon Constitution, applies equally under the federal standard: The classification in ORS 107.108(1) is permissible under the Equal Protection Clause.

The decision of the Court of Appeals is affirmed. The order of the circuit court is reversed.

---

[4] The Court of Appeals correctly drew the same conclusion. *See Crocker*, 157 Or App at 660-62 (so holding).